Good morning, Your Honor. I'd like to reserve three minutes for rebuttal. Good morning. May it please the Court. My name is Sean Perdomo and I represent the petitioner Pompilio Hernandez-Umana. Mr. Hernandez-Umana respectfully requests the Court remand his removal proceedings for a new hearing before a new immigration judge based on explicit bias that prejudiced the outcome of his proceedings. This Court has the legal authority to consider his constitutional due process claim because to ignore the blatant bias in his proceedings will result in manifest injustice. Can you identify what specific, what's the most egregious bias that you can identify from the record? It's at the outset of the proceedings when the immigration judge asked him where he worked and the petitioner responded that he worked at the Home Depot company. The immigration judge then proceeded to ask, is that where you go to the parking lot and they pick you up for jobs? That's the most egregious example of bias that we have and then from there he responds that he owns a home and the immigration judge almost incredulously asked him, do you have a mortgage? To which he responded, yes. Those statements were unnecessary to be asked by the immigration judge because they were contained within his I-589. His home address was listed on there and there was also a letter in support from his friends that were in evidence, one from his mortgage lender, to verify that he did in fact own a home. So at the outset of the proceedings, you could already tell that there was a taint of bias in how the immigration judge was viewing this. But they were going back and forth with the with the government's attorney as well, weren't they? I'm sorry, who was going back and forth? Well, the judge, right? No, Your Honor. The way I recall the testimony coming in, the testimony was constantly redirected. Well, hold on, the question, and because I read your position with regards to the process allegations, I wanted to make sure, I went through the record, I wanted to make sure that that I understood it as a whole. And one of the things, one of the exchanges I found telling, which was important to me, was when the judge asked Mr. Young, which was the government's attorney, as I understand, says, we're in a finite circumstances here and I understand that we've got some time today and we're fortunate in that respect, but just ask a question that furthers the dialogue and I'll welcome you that. That's all. That's all I'm saying. The exact question that was posed, it was posed by me. He answered it. I thought he answered it clearly. I don't know. He's on the bus. The guy's on the street writing parking tickets. In other words, I signal this particular exchange because it sounds like it's a frustrated judge that's wanting to move things forward and he's giving it to the government as well. Yes, Your Honor. There are points where the immigration judge is directing the testimony and that is the problem here, is that the immigration judge is aggressively redirecting the testimony to reach the particular conclusion that he wants in this case. He's not letting the testimony come in as a judicial officer. I have a question. Was this issue raised before the BIA? No, Your Honor, it was not. Isn't that a problem? Yes, that is a problem, Your Honor, and just because it was not exhausted before the administrative agency, before the board, doesn't mean that this court cannot consider it. Why not? Because in this case, I'm sorry, in the precedent that we rely on here is Hall versus City of Los Angeles, and in Hall versus City of Los Angeles, which is not an immigration case, I understand, like, the look that you're giving me, it's a 1983 civil case where an issue with due process was not exhausted. In that case, there was a coerced confession in 1983 of litigation that was not raised below, but the judicial courts, when they reviewed it... Yeah, but that's very different, as you know. I mean, something isn't raised before the agency, and in fact, and the government, the Respondent, notes that, which they did here, and then I think, aren't we just without authority to decide that? I mean, this is a — it's couched as a due process argument, but our case law says that if it's a due process argument, but one that you could have raised procedurally, then you have an exhaustion problem. Yes, Your Honor, but not all is lost, because this court can consider constitutional due process claims in the first instance. Now, the jurisprudence that has to do with the Board of Immigration Appeals being able to review and correct its own errors, it doesn't apply necessarily to constitutional due process claims, although... But it largely applies to constitutional due process claims. Largely, but in this instance, this isn't like a violation of a regulation or a statute that wasn't raised before that the Board would clearly have authority to go and correct. In this instance, it is solely a due process claim, and this isn't something that's cloaked in constitutional garb to get it before this court. It's actually being raised in the first instance here, and it is purely a due process claim because it is based on invidious discrimination, and it would be a manifest injustice for this court not to consider such blatant bias that was demonstrated by the immigration judge on the record. This also goes to the reputation of the judiciary, and in this case... Do you have any other arguments that you want to raise? Yes, Your Honor. When you look at... I understand that the issue here is that it was not exhausted before the Board, and that's perhaps why you cannot review the bias, but you can also look at the conduct of proceedings and the other argument that I would like to bring up here, and you can see how this bias does affect the conclusions that were reached and how they were flawed. There was clear legal error here in the past persecution analysis. When you look at the past persecution analysis that was done by the court, in this instance, three pages are devoted to describing the incident where there was an altercation. It does not mention the mental health evidence. It doesn't mention whether... Counselor, again, going back to a question about raising these issues, those issues, the NTA issue and the asylum claim issues, those issues were not addressed to the BIA, right? The one issue here, Your Honor, which I do want to raise is the past persecution issue, which also goes to the withholding of removal, and that one does survive all exhaustion in this case. So aside from the bias argument that we had raised in our briefs, when you look at the past persecution analysis, there is clear legal error here that under the ordinary remand rule, once that clear error is then discovered, it should be remanded. But wait. Go ahead. I was just going to ask if that issue matters if there isn't a cognizable social group. Okay. So with the cognizable social group, this was also error. The Board of Immigration Appeals said that there was insufficient evidence to find that there was social distinction within that particular social group, and it relied on the immigration judge's analysis. Here, the immigration judge, contrary to the evidence in the record, stated it wasn't done in any public way or in any public circumstance. He is misstating the records evidence that's before the court there to make his conclusions. That shows that he's committing legal error as he's going through each one of the elements for disposing of the asylum claims. So it's not just the bias. It's also cutting the petitioner off. It's reaching conclusions that aren't supported by the record. It's misstating. What evidence do you think was overlooked? I believe, well, going back to past persecution, I'm not trying to... Well, no. I'm asking about social group. Your answer to my social group question was something about missing the evidence in the record. I don't know what you are referring to. The country conditions evidence points out that there's violence against women and that it's not taken very seriously in El Salvador. Additionally, there is evidence that he was targeted because he had intervened in this domestic violence incident. There's a statement in the record that he makes. Also... What do you mean by that? What I mean by that is that he told, he was told by his wife and that he was being targeted because he had intervened in this domestic violence dispute. But does that mean that there's a group of people who intervene in domestic violence who are targeted and recognized in this country or just that there was a vendetta in this particular instance? Okay. So staying with the particular social group claim, Your Honor, here there is a distinct group that is set aside. Even the government's brief points out that people that intervene in domestic violence incidents are so few in this country that people seek out gang leaders to intervene in these incidents. It shows that within El Salvador, people that actually take a stand against domestic violence and intervene are set aside and distinct. And where is that in the record? And that is on page 635, Your Honor, and I'll come up on rebuttal and correct myself if I find out that was the wrong citation. But it's also cited within the government's brief when they're addressing this very issue. Yes, it's 635. And then you can also look at 196 through 197 for the country conditions reports that talk about violence against women in El Salvador. And, sorry, where on 635 does it say something about people recognizing the people who intervene? I'm sorry, for 635 that is the gang leaders, how people seek out gang leaders to intervene in disputes. And from there, there's an inference that people within the El Salvadoran society view people who intervene in domestic violence incidents as somehow set aside or socially distinct. I don't understand. The gangs are asked to intervene against the people who protect against social violence, domestic violence, or they're asked to get involved in protecting against domestic violence or what? Yes, because the society views people who intervene in domestic violence incidents as set aside or somehow distinct. And so what does the gangs have to do with this? Because they seek out people that are non-official government entities. They don't rely on the police. They look for people in the community. In order to help oppose domestic violence? That's correct, Your Honor. And because these people are so few, they're seen as distinct in that society. And that's why that fact is so relevant. In this instance, he did intervene, something that goes against the culture there, as it's described in the country conditions evidence. But aside from those... We have you over your time, so we'll still give you two minutes for rebuttal. Good morning. Christopher Pryby for the Attorney General. May it please the Court. I would like to make three points in response to the reply brief that we didn't have the opportunity to address. The first one is about bias and its exhaustion. There is binding case law that actually says even straight due process claims that have to deal with bias have to go through exhaustion. There's not this constitutional exception for them. That would be Sanchez Cruz, V.I.N.S. 255 F. 3rd 775, Penn site 779 through 780, and it's a 2001 case. It's also as to exhaustion in general, in response to Judge Mendoza's question about whether there were any other issues that didn't need to be exhausted by being raised to the board. Counsel did not indicate that the NTA issue was one such issue, so I that is a concession by counsel that that issue didn't in fact need to be exhausted and was not exhausted in this instance. In any case, the Abebe case cited in the government's brief that forecloses any argument that raising an issue in the notice of appeals in the notice of appeal to the board suffices for exhaustion when that issue is then left out of the merits brief to the board. And then finally, in response to his his points that Sarmadi V.I.N.S. allows him to seek review of the motion to reconsider without having to file a case did not consider as whether it whether a petition for review of the original boards, the original dismissal of the petitioner's appeal was still pending before saying whether it had to be consolidated or not. Moreover, the statute requires that the petitioner actually seek review before case is consolidated and here no petition for review was filed under Federal Rules of Appellate Procedure 15. That is how he would have to seek review in this court of a board order, of an agency order. And moreover, there's no response in petitioner's reply brief to the Attorney General's citation of the Andea case, which also says a separate PFR is required of a denial of a motion to reopen or reconsider. Unless the court has any further questions, the Attorney General requests that the petition for review be denied. Thank you very much. Thank you. We have two minutes for rebuttal. I'll make this brief, but the particular social group just picking up on that conversation where we left off, when you look at the immigration judge's analysis, and that's really what we're taking issue with here is how he conducted the analysis. When he addresses the particular social group, he doesn't actually use the legal standards. He doesn't determine whether or not this particular group was set aside or somehow socially distinct. Instead, what he does is he recounts the incident that he finds so egregious that there was this physical altercation and he cites it 242, the immediate out punishment against the person responsible for the DV incident. He doesn't really go into how the group may be set aside or socially distinct or set apart. He goes back to the incident just to paint him in the worst possible light as a criminal. Aren't we looking at the BIA though, and the BIA says that the group is not socially distinct at AR-4? They do, but these just say that there's insufficient evidence and they otherwise agree with the immigration judge's decision, so it incorporates the immigration judge's analysis as part of their decision. It doesn't go into great detail as to whether or not that particular social group on the evidence was set aside or somehow socially distinct. You can see this throughout the immigration judge's decision because when you look at the past persecution, that's where you'll see, if the court reaches that question, that the judge didn't even look at the evidence cumulatively. He looked at single instances and in that particular portion of the decision, when you review it, it's about three pages and three pages of him reciting what had happened at the restaurant. It doesn't discuss whether the PTSD was taken into consideration, whether or not the threats, the continued visits to his home, any of those things contributed to it. There's also evidence in the record that his house was shot at three times and it wasn't even developed within the testimony as to where those shots came from, so that kind of demonstrates why the judge did not apply the correct legal standard and under the ordinary remand rule, it should get remanded back and even the government's brief concedes that if this court does reach those issues on past persecution, well-founded fear, nexus, and internal relocation, that it should be sent back down for a proper analysis before the board. So without hearing any further questions, I submit. Thank you very much. Thank you both sides for the arguments. This case is submitted.
judges: BERZON, FRIEDLAND, MENDOZA